```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
NAKED COWBOY, d/b/a NAKED COWBOY    :
ENTERPRISES,                        :
                                    :
                  Plaintiff,        :
                                    :       11 Civ. 0942-BSJ-RLE
            v.                      :
                                    :       Opinion and Order
CBS and BELL-PHILLIP TELEVISION,    :
                                    :
                  Defendants.       :
                                    :
------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/12

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Naked Cowboy has brought this action against CBS and Bell-Phillip Television ("Defendants") for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125, New York General Business Law §§ 349, 350, 360-l, New York Civil Rights Law §§ 50, 51, and for common law fraud. Defendants have moved to dismiss the Complaint. (Dkt. 8.) For the reasons stated below, Defendants' motion is granted.

### FACTUAL BACKGROUND

All factual allegations in the Complaint are accepted as true, as they must be on this motion to dismiss. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). In setting forth the relevant factual background, the Court has considered facts alleged in the Complaint, documents attached to the Complaint as exhibits, and documents incorporated by

reference in the Complaint.  <u>Hayden</u> v. <u>County of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999).

Plaintiff is an "enormously successful and popular" street performer who "dresses as a cowboy—only a virtually Naked one." (Compl. ¶¶ 9, 13.)  When performing, he wears only briefs, cowboy boots, a cowboy hat, and a guitar.  (<u>Id</u>. ¶ 9.)  The words "Naked Cowboy" are displayed across the back of his briefs, on his hat, and on his guitar.  (Penchina Decl. Exs. A, B.)  The word "Tips" or the symbol "$" is painted on his boots.  (<u>Id</u>.)  Wearing this costume, Plaintiff "meet[s] and greet[s] the public in New York City's Times Square," (Compl. ¶ 9), and has been doing so since 1997, (<u>id</u>. ¶ 8).  Plaintiff "can be seen on any given day in Times Square."  (Compl. Ex. B.)  Plaintiff has also appeared throughout the country and in movies, radio, magazines, and newspapers.  (Compl. ¶ 12; Compl. Ex. B.)  Plaintiff has already made roughly fifteen television appearances as himself. (Compl. Ex. B.)  According to the New York State tourism department, Plaintiff is "more recognizable than The Statue of Liberty."  (<u>Id</u>.)

Plaintiff registered the word mark "Naked Cowboy" on April 9, 2002, and reregistered the same mark on May 25, 2010.  (Compl. ¶ 16.)  Plaintiff has obtained "numerous corporate sponsorships" and sells licensed merchandise, "includ[ing] T-Shirts, Postcards, Keychains, Shot Glasses, Music CDs, Pencils,

2

Photos and more" throughout New York City. (Id. ¶ 18.) Plaintiff also has distribution and endorsement agreements with New York Popular & Robin Ruth and with Blue Island Shellfish Farms. (Id. ¶ 19.)

CBS is the network that broadcasts "The Bold and the Beautiful," a thirty-minute daytime television series. (Id. ¶ 21.) Bell-Phillip is the producer of the television program. (Id.) Bell-Phillip's well-known "B&B" logo is displayed during the opening credits of the show, and "Bell-Phillip Television Productions, Inc." appears in large bold letters at the end of each episode. (Weaver Decl. Ex. A.) "CBS Television City" and the famous CBS "Eye" logo are also displayed during the closing credits. (Id.)

The Complaint arises from the November 1, 2010, episode of "The Bold and the Beautiful" (the "Episode"). The Episode featured a character named Oliver who, for several seconds, appeared only in his briefs, cowboy boots, and a cowboy hat, while singing and playing the guitar. (Compl. ¶¶ 23, 24.) The words "Naked Cowboy" did not appear anywhere during the Episode, nor were they spoken by any of the characters. (Weaver Decl. Ex. A.) "Naked Cowboy" was not written on Oliver's underwear, his hat or his guitar, and his boots did not display the words "Tips" or "$". (Weaver Decl. Ex. A.)

Each week, Bell-Phillip airs a recap of what happened on the preceding week's episodes of The Bold and the Beautiful called "The Clarence B&B Update."  (See Compl. ¶ 27; Weaver Decl. Ex. B.)  On November 5, 2010, the Clarence B&B Update recapped all five episodes from the week of November 1, 2010, including the scene where Oliver sings and plays the guitar.  (Id.)  The Clarence B&B Update included no reference to or mention of the words "Naked Cowboy."  (Weaver Decl. Ex. B.)  Bell-Phillip's "B&B" logo appears prominently on the screen at all times during the Clarence B&B Update.  (Weaver Decl. Ex. B.; Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") Ex. F.)

An audience of roughly 3,049,000 people viewed the original airing of the Episode.  (Compl. ¶ 26.)  During both the original airing of the Episode, and the November 5 recap episode, Defendants profited from paid commercial advertisements.  (Id. ¶ 32.)

CBS posted a clip of the Episode on CBS's YouTube channel, and Bell-Phillip posted the November 5 Clarence B&B Update on the "boldandbeautiful" YouTube channel.  (Id. ¶ 30.)  CBS titled its YouTube clip "The Bold and the Beautiful – Naked Cowboy," and "began selling advertising with that video immediately."  (Id. ¶ 34.)  The CBS and CBS "Eye" logos were displayed prominently on CBS's YouTube page.  (Downs Decl. Ex. B; Pl.'s

4

Opp. Ex. C.)  The caption "Oliver has a surprise for Amber" appeared beneath the clip.  (Id.)  "CBS.com" and CBS's "Eye" logo appear at the end of the clip.  (Downs. Decl. Ex. A.)

YouTube pages often include "tags" which are words that describe a particular video and help viewers find the content for which they are searching.  (See e.g., Pl.'s Opp. Ex. F.)  Roughly 30 tags were listed beneath the clip on the Clarence B&B Update page, including the words "naked" and "cowboy."  (Compl. ¶ 37; Pl.'s Opp. Ex. F.)  "Defendants also purchased adword advertising from youtube for the specific search term 'naked cowboy,' which gave [the clips] top page visibility as a 'Featured Video' on youtube."  (Compl. ¶ 35.)  If a user typed the search term "naked cowboy" into the YouTube search engine, "the page would repeatedly refresh with the Defendants' videos" among the top search results.  (Id. ¶ 36.)

The Complaint asserts nine causes of action arising from Defendants' alleged use of the Naked Cowboy costume, as well as the use of the words "naked," "cowboy," and "Naked Cowboy" in connection with the YouTube clips of the Episode and the Clarence B&B Update.  Defendants have moved to dismiss the Complaint under Federal Rule 12(b)(6) for failure to state a claim on which relief may be granted.

## LEGAL STANDARD

5

To survive a Rule 12(b)(6) motion to dismiss, a complaint must articulate sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Dismissal under 12(b)(6) is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

**DISCUSSION**

**I.   LANHAM ACT CLAIMS**

Plaintiff asserts claims of trademark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), false designation of origin, false advertisement, and false description claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and dilution under the Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

A. <u>Trademark Infringement Claim</u>

The Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. 1114(1)(a). To prevail on a trademark infringement claim, Plaintiff must establish that: (1) it has a valid registered mark; and that (2) Defendants used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, and (5) without Plaintiff's consent. <u>1-800 Contacts, Inc. v. WhenU.com, Inc.</u>, 414 F.3d 400, 406-07 (2d Cir. 2005). In addition, Plaintiff must allege facts sufficient to establish that Defendants' use of the registered mark "is likely to cause confusion ... as to the affiliation, connection, or association of [Defendants] with [Plaintiff], or as to the origin,

7

sponsorship, or approval of [Defendants'] goods, services, or commercial activities by [Plaintiff]." Id. at 407.

"Naked cowboy" is a registered mark and Plaintiff is thus afforded trademark rights in the phrase. However, there could have been no infringement of those rights if Defendants did not make use of the word mark in commerce. A mark is used in commerce for trademark infringement purposes when (1) "it is placed in any manner on the goods . . . or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and (2) "the goods are sold or transported in commerce[.]" 15 U.S.C. § 1127. None of the contents of the Episode could have violated Plaintiff's trademark rights because the word mark "Naked Cowboy" does not appear anywhere in it. Similarly, inclusion of "naked" and "cowboy" as separate tags associated with the YouTube video clips is not "use" of Plaintiff's word mark "Naked Cowboy."

The purchase from YouTube of adword advertising for the term "naked cowboy" likewise does not constitute "use in commerce" because Defendants did not "place [the "naked cowboy" term] on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship." Merck & Co., Inc. v. Mediplan Health Consulting,

sponsorship, or approval of [Defendants'] goods, services, or commercial activities by [Plaintiff]."  Id. at 407.

"Naked cowboy" is a registered mark and Plaintiff is thus afforded trademark rights in the phrase.  However, there could have been no infringement of those rights if Defendants did not make use of the word mark in commerce.  A mark is used in commerce for trademark infringement purposes when (1) "it is placed in any manner on the goods . . . or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale," and (2) "the goods are sold or transported in commerce[.]"  15 U.S.C. § 1127.  None of the contents of the Episode could have violated Plaintiff's trademark rights because the word mark "Naked Cowboy" does not appear anywhere in it. Similarly, inclusion of "naked" and "cowboy" as separate tags associated with the YouTube video clips is not "use" of Plaintiff's word mark "Naked Cowboy."

The purchase from YouTube of adword advertising for the term "naked cowboy" likewise does not constitute "use in commerce" because Defendants did not "place [the "naked cowboy" term] on any goods or containers or displays or associated documents, nor do they use them in any way to indicate source or sponsorship."  Merck & Co., Inc. v. Mediplan Health Consulting,

Inc., 425 F. Supp. 2d 402, 415 (S.D.N.Y. 2006). The only use of Plaintiff's registered word mark in commerce – and therefore the only potential source of trademark infringement – is CBS's use of the term "Naked Cowboy" in the title of its YouTube video clip.

   Not every unauthorized use of a protected mark is actionable. Yankee Pub. Inc. v. News Am. Pub. Inc., 809 F. Supp. 267, 272 (S.D.N.Y. 1992). Section 33(b)(4) of the Lanham Act provides an affirmative defense to an infringement claim where the use of the mark "is a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith only to describe the goods ... of such party[.]" 15 U.S.C. § 1115(b)(4). The fair use defense permits use of protected marks in descriptive ways, but not as marks identifying the user's own product. Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir. 1995). If it cannot be proven that the unauthorized use serves to identify the source of the defendant's product, such use is not protectable as a trademark. See ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 922 (6th Cir. 2003) (citing J. THOMAS MCCARTHY, MCCARTHY ON TADEMARKS AND UNFAIR COMPETITION, § 3:1 (2002)).

   Here, the challenged phrase "Naked Cowboy" is an example of non-trademark use. It is clear that CBS used the phrase in an effort to describe the contents of the video clip, not as a mark

9

to identify the source of the video clips. See Arnold v. ABC, Inc., No. 06 Civ. 1747, 2007 WL 210330, at *2-*3 (S.D.N.Y. Jan. 29, 2007). The fact that the Episode's source is CBS and not Plaintiff is clearly evidenced by the prominent display of the series' title and CBS's own recognizable "Eye" logo, as well as the short caption beneath the clip which references only named characters on the series. Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30-31 (2d Cir. 1997); Arnold, 2007 WL 210330, at *3.

Plaintiff fails to allege sufficiently that CBS used the word mark in bad faith. To establish bad faith, Plaintiff must show that CBS "intended to trade on the good will of [Plaintiff] by creating confusion as to source or sponsorship." Arnold, 2007 WL 210330, at *3 (quotations and citation omitted). Besides conclusory allegations, the Complaint alleges no set of facts which, if true, would lead to the conclusion that CBS sought to gain advantage by associating its television program with the Naked Cowboy. Accordingly, CBS's use of "Naked Cowboy" as part of the title of its YouTube video clip as alleged constitutes fair use under 15 U.S.C. § 1115(b), and Plaintiff's trademark infringement claim is dismissed.

B.   Unfair Competition Claims[1]

---

[1] The Complaint asserts a handful of related causes of action (false endorsement, false description, false advertising), which the Court construes

10

Section 43(a) of the Lanham Act makes liable "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1).  This provision "is an appropriate vehicle for the assertion of claims of falsely implying the endorsement of a product or service by a real person."  Albert v. Apex Fitness, Inc., No. 97 Civ. 1151, 1997 WL 323899, at *1 (S.D.N.Y. Jun. 13, 1997) (quotations and citation omitted).  To state a claim under Section 43(a), Plaintiff must establish that Defendants, "(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of

---

collectively as a claim of unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

the goods or services." Burck v. Mars, Inc., 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008).

To the extent that the Complaint asserts that Defendants' alleged use of Plaintiff's word mark "Naked Cowboy" constitutes a "false or misleading representation of fact," the Court applies the fair use defense to Plaintiff's Section 43(a) claims as it did to Plaintiff's trademark infringement claim above. Arnold, 2007 WL 210330, at *2 n.5.

Plaintiff asserts that the Naked Cowboy costume is a protectable mark, and that Oliver's costume in the Episode constitutes use by Defendants' of the Naked Cowboy costume. The question of whether the costume is a valid trademark "depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public." Pirone v. MacMillan, Inc., 894 F.2d 579, 582 (2d Cir. 1990) (citation omitted).

The Naked Cowboy costume contains several distinctive characteristics, namely the presence of "Naked Cowboy" on the hat, briefs and guitar, as well as the "Tips" or "$" on the boots. As evidenced by the New York State tourism department, the Naked Cowboy costume is extremely recognizable. The Court concludes that the combination of distinctive characteristics and level of recognition make the Naked Cowboy costume a protectable mark. Oliver's costume, on the other hand, contains

12

none of the distinctive characteristics of the Naked Cowboy costume. Simply put, Oliver did not wear the Naked Cowboy costume, and Defendants therefore made no use of Plaintiff's mark in the Episode.

The Court will nonetheless address whether there could remain a likelihood of confusion among the public about the "origin, sponsorship, or approval" of the Episode. "Likelihood of confusion requires that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question, or are likely to believe that the mark's owner sponsored, endorsed, or otherwise approved of the defendant's use of the mark." Merck, 425 F. Supp. 2d at 411 (quotations and citations omitted). In analyzing the likelihood of confusion, courts in the Second Circuit apply the eight factors set forth by Judge Friendly in Polaroid Corporation v. Polarad Electronics Corporation, 287 F.2d 492, 495 (2d Cir. 1961). See Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330, 339 (S.D.N.Y. 2000). The eight factors are:

>   (i) the strength of plaintiff's mark;
>   (ii) the similarity of the parties' marks;
>   (iii) the proximity of the parties' products in the marketplace;

>    (iv) the likelihood that the prior user will bridge the gap between the products;
>
>    (v) actual confusion;
>
>    (vi) the defendant's good or bad faith in adopting the mark;
>
>    (vii) the quality of defendant's product; and
>
>    (viii) the sophistication of the relevant consumer group.

Polaroid Corp., 287 F.2d at 495.

Application of the Polaroid factors to the instant case reveals that there is no likelihood of confusion about the source of the Episode. The Naked Cowboy costume is indeed distinctive, but as noted above, the similarities between Oliver's costume and the Naked Cowboy costume are minimal at best. Moreover, the Complaint contains no allegations of actual confusion.

As for the proximity of the parties' products in the marketplace, Defendants and Plaintiff occupy "distinct merchandising markets." Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 504 (2d Cir. 1996). Defendants produce and broadcast a daytime television program which is watched by millions of people across the country. Plaintiff performs on the street, predominantly in Times Square, and although he has appeared throughout the country, his performances are heavily concentrated in the New York City area.

Plaintiff does not market or provide any services that are in competition with a daytime television series. In addition, while Plaintiff has on numerous occasions appeared as himself on television, none of his television appearances suggests a desire to transition into creating and producing a daytime soap opera, so there is no likelihood that Plaintiff will bridge the gap between the two markets.

As discussed above, Plaintiff has alleged no facts suggesting that Defendants acted in bad faith. And, despite numerous references to the high quality of Plaintiff's brand, the Complaint alleges no facts that suggest that Defendants' product is of low quality. Finally, the Complaint contains no allegations related to the sophistication of the show's audience, and the Court finds that even an unsophisticated viewer would not confuse the source of the long-running daytime television series with the source of Plaintiff's street performances or Naked Cowboy souvenirs. See Chum Ltd. v. Lisowski, 198 F. Supp. 2d 530, 541 (S.D.N.Y. 2002).

None of the Polaroid factors suggests a likelihood of confusion about the source of the Episode. Plaintiff's Section 43(a) claims must be dismissed.

   C.   Dilution Claim

Section 43(c) of the Lanham Act also provides that "the owner of a famous mark that is distinctive, inherently or

15

through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c).

As with all of Plaintiff's Lanham Act claims, the Section 43(c) dilution claim requires that Defendants used Plaintiff's mark in commerce. The Complaint asserts that Oliver's costume constitutes use of Plaintiff's mark, and therefore that Plaintiff's reputation will be diluted. For the reasons described above, Oliver's costume is simply not sufficiently similar to the Naked Cowboy costume to constitute use of the mark. Plaintiff's federal dilution claim is therefore dismissed.

## II.  NEW YORK STATE LAW CLAIMS

### A.  Deceptive Acts and Practices Claims

The Fifth and Sixth causes of action assert claims of unfair competition under the New York Deceptive Acts and Practices statute, N.Y. Gen. Bus. L. §§ 349, 350. The standards under these provisions are substantially the same as those applied to claims brought under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a). <u>Avon Prods., Inc. v. S.C. Johnson & Son, Inc.</u>, 984 F. Supp. 768, 800 (S.D.N.Y. 1997). Consequently, Defendants' motion to dismiss Plaintiff's state law claims for unfair competition under Sections 349 and 350 is granted.

B.  <u>Dilution Claim</u>

Plaintiff has also brought a state law dilution claim under New York General Business Law § 360-l, which provides that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. § 360-l (McKinney 2011). As with Plaintiff's federal dilution claim, its state law dilution claim must fail because Oliver's costume contained none of the distinctive characteristics of the Naked Cowboy costume, and therefore, Defendants did not use Plaintiff's mark in the Episode. Accordingly, Plaintiff's Section 360-l claim is dismissed.

C.  <u>Civil Rights Violations</u>

The Complaint also alleges that Defendants violated Sections 50 and 51 of New York Civil Rights Law by "misappropriate[ing] the Naked Cowboy brand." (Compl. ¶ 68.)

17

As a result, Plaintiff argues, Defendants "maliciously and unlawfully invaded Plaintiff's privacy and/or publicity rights." (Id. ¶ 69.)

Section 50 forbids the "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person" without prior consent. N.Y. Civ. Rights § 50 (McKinney 2009). Section 51 creates a private right of action for violations of Section 50. N.Y. Civ. Rights § 51 (McKinney 2009). A court in this district has already rejected Plaintiff's civil rights claims in the context of advertisements in which cartoon M&Ms were dressed as the Naked Cowboy. Burck, 571 F. Supp. 2d at 454. The Burck court held definitively that the right to privacy "does not extend to fictitious characters adopted or created by celebrities[,]" and it does not protect "a trademarked, costumed character publicly performed by a person." Id. at 453. The imitation of the Naked Cowboy in Burck was even more obvious than the alleged imitation of the Naked Cowboy in the Episode, and that court's holding is directly applicable to this case. Plaintiff's New York civil rights claims are therefore dismissed.

### III. COMMON LAW FRAUD

To state a claim of fraud under New York law, a plaintiff must establish "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2)

18

made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (quotations and citation omitted).

Plaintiff's claim of fraud is frivolous.  The claim is not based on any alleged misrepresentation made to Plaintiff upon which he relied to his detriment.  Plaintiff asserts instead that Defendants' use of the Naked Cowboy costume caused a fraud on the public.  (Compl. ¶ 71.)  Any claim of fraud on the public is subsumed by Plaintiff's trademark infringement and unfair competition claims, which the Court has already dismissed.  As for Plaintiff's purported injury, Plaintiff cannot plausibly plead that he relied on Defendants' alleged misrepresentation or that such reliance could have been justifiable.  The Complaint does not plead a coherent claim of fraud, and the Eighth cause of action is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of the Court is directed to terminate the motion (Dkt. 8).

**SO ORDERED:**

```
                              _____
                              BARBARA S. JONES
                              UNITED STATES DISTRICT JUDGE
```

Dated:    New York, New York
          February 22, 2012